UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:19-cr-18 |
| v. | |
| BRYANT SNOW & LARRY SNOW, | MEMORANDUM OPINION |
| *Defendants.* | JUDGE NORMAN K. MOON |

**I. Summary**

The Snows are convinced that their actions, as described in the indictment, do not fall within the ambit of 18 U.S.C § 1028(a)(7). As charged, that statute makes it a felony to knowingly, and without legal authority, mail a means of identification of another person in connection with any unlawful activity that constitutes a violation of federal law.

In their first round of motions, Dkts. 106; 108, the Snows argue that the DMV printout they are charged with mailing contains almost no means of identification *of a person* as required by § 1028(a)(7). That is because, as they contend, vehicle identification numbers—i.e., a VIN, title number, and license plate number—actually identify property. Not persons. The problem with this argument is the inescapable breadth of the statutory definition, which encompasses information that identifies people indirectly as well as directly. Section 1027(d)(7) defines the term "means of identification," as used in § 1028(a)(7), to include any identifier that can be used, alone or in conjunction with other information, to identify a specific individual. The Snows themselves have shown that vehicle identifying information meets that definition.

In their second set of motions, Dkts. 120; 126, the Snows take a slightly different tack. Here, they insist that § 1028(a)(7) requires two separate and distinct unlawful acts: (1) the mailing of personal identifying information, and (2) the unlawful activity in connection with which the personal identifying information is mailed. And, the Snows contend, the government has only alleged one act. But both the major and minor premises are false. The statute does not require separate and distinct conduct. And, regardless, the government does not rely on the same conduct to make out (1) and (2). As the indictment charges, the Snows' unauthorized mailing of personal identifying information occurred by separate conduct and after their alleged unlawful activity. The Court will deny the motions.

## II. Factual and Procedural Background

The government's superseding indictment alleges the following facts. While Bryant Snow was in state custody at Central Virginia Jail, he received discovery containing the license plate numbers of vehicles driven by the informant who made the confidential drug purchase from Bryant Snow. Dkt. 58 at 3. The government and the parties refer to that informant as "Person A." Bryant later asked Larry Snow, Bryant Snow's father and the Greene County Commissioner of Revenue, to use Larry's access to the DMV database to print off Person A's registration information, which Bryant would then use to corroborate Person A's identity. *Id*. at 4–5. That conversation occurred during a recorded jailhouse call. *Id*. About a week later, Larry did as his son asked. *Id*. at 5. Larry accessed the DMV database, conducted searches of the informant's vehicle identification information, and printed the results. *Id*. All while on a second recorded telephone call with Bryant. *Id*. Bryant then, on the same call, instructed his father to mail five copies of the printout to Bryant in jail. *Id*. Larry agreed. *Id*. And, true to his word, Larry mailed the printouts that same day. *Id*.

The Snows are charged, among other things, with violating 18 U.S.C. § 1028(a)(7). Dkt. 58. Section 1028(a)(7) provides:

> Whoever, in circumstances described in subsection (c) of this section . . .
>
> (7) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or constitutes a felony under any applicable State or local law
>
> shall be guilty of violating that statute. 18 U.S.C. § 1028(a).

The circumstances described in subsection (c) are that, in pertinent part:

> (3) either—
>
> (A) the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce, including the transfer of a document by electronic means; or
> (B) the means of identification, identification document, false identification document, or document-making implement is transported in the mail in the course of the production, transfer, possession, or use prohibited by this section.

And the term "means of identification" is defined by the statute as:

> [A]ny name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any–
> > (A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
> > (B) unique biometric data, such as a fingerprint, voice print, retina or iris image, or other unique physical representation;
> > (C) unique electronic identification number, address, or routing code; or
> > (D) telecommunication identifying information or access device (as defined in section 1029(e)).
>
> 18 U.S.C. § 1027(d)(7).

### The Snows' Arguments

Bryant Snow filed a motion to strike from the indictment all reference to Person A's vehicle identification information. Dkt. 106. Bryant Snow argues that these numbers are surplusage because they are not "means of identification of another person" within the meaning of § 1028(a)(7). *Id*. at 1. And their inclusion is misleading because a jury might think they are. *Id*. Larry Snow has joined that motion. Dkt. 108.

Bryant relies on principles of statutory construction, legislative history, and caselaw for his argument that vehicle identification numbers are irrelevant to the charge. Bryant's plain-language argument is that information identifying a vehicle is not naturally thought of as "a means of identification *of another person*." A vehicle is not a person. Moreover, information identifying a vehicle cannot reveal who is using the vehicle. And while it may be used to identify a vehicle's owner, it does so only indirectly. And imperfectly. The link between the vehicle's identifying numbers and the vehicle's owner is unreliable because new owners may neglect to transfer title or register the vehicle.

Nor is vehicle identifying information among the enumerated examples in the statutory definition in § 1027(d)(7).  Thus, Bryant urges that the descriptive *ejusdem generis* and *noscitur a sociis* canons exclude it from the otherwise expansive definition—"any name or number that may be used, alone or in conjunction with other information, to identify a specific individual"—as well. Because the examples given are examples of information identifying people, Bryant reasons, the Court should infer that only information referring to persons—and not property—are covered. Similarly, Bryant argues that the government's reading violates the canon against superfluity. If the illustrative examples do nothing to limit the statute's broad definition, then they serve no purpose that is not already served by the definition itself.

4

Bryant argues that his plain reading is supported by the legislative history, which, he asserts, shows that Congress's purpose in adding paragraph (a)(7) was to address identity theft.[1] For example, he cites Senator Leahy's statement that the bill "penalizes the theft of personal identification information that results in harm to the person whose identification is stolen and then used for false credit cards, fraudulent loans or for other illegal purposes. 114 Cong. Rec. S12604-02 (Oct. 14, 1998). Since misuse of information identifying personal property is not typically thought of as facilitating identity theft in the way that personal identifying information is, Bryant insists that such information does not fall within the statute's protection.

Lastly, Bryant represents that no court has, as of yet, read § 1028(a)(7) to include a VIN, title number, or license plate number.

Larry Snow separately filed a motion to dismiss the counts relating to § 1028(a)(7) on the theory that the statute only imposes liability when identifying information is unauthorizedly mailed in connection with unlawful activity that is separate and distinct from the mailing itself. And that the government has, in effect, failed to state a claim because it only alleged a single act in making out its § 1028(a)(7) allegation. Dkt. 120. Bryant Snow has joined this motion and contributed to it. Dkt. 126.

---

[1] In his briefing on the subsequent motion, Larry points out various contextual clues in the statute itself to the same effect. Section 1028(a)(7) appears in Chapter 47 of the United States Code, which is entitled "Fraud and False Statements." Dkt. 142 at 6. And that each of the forty offenses set forth in Chapter 47 criminalize some form of fraud or false statement. Of course, because the enacting Congress does not determine a bill's location in the United States Code (that is done later by the Office of the Law Revision Counsel of the U.S. House of Representatives), it might be more relevant to note that paragraph (a)(7) was added to § 1028 in the Fall of 2018 as part of the "Identity Theft and Assumption Deterrence Act of 1998." PL 105-318. The subheading reads "An Act to amend chapter 47 of title 18, United States Code, relating to identity fraud, and for other purposes." *Id*. The section caption under which § 1028 falls is "Identity Theft." *Id*.

For his interpretation of the statute, Larry largely relies on legislative history and rules of statutory construction. But his strongest authority (on its face) is a single quote from a Ninth Circuit decision in which that court inserted the word "other" before "unlawful activity" in its description of what a § 1028(a)(7) conviction requires. *United States v. Sutcliff*, 505 F.3d 944 (9th Cir. 2007). There, the Ninth Circuit wrote: "a conviction under § 1028(a)(7) is based on the defendant's unlawful action of transferring or using another individual's means of identification with the intent to commit or to aid or abet *other unlawful activity*." *Id*. at 960 (emphasis added).

With respect to rules of statutory interpretation, Larry relies on the rule of lenity and the rule against surplusage. For the latter, he contends that if two separate acts are not required, § 1028(a)(7)'s "in connection with unlawful activity" language would be "at best superfluous and at worst nonsensical." Dkt. 140 at 4. Additionally, Larry turns to contextual clues in the larger statute and legislative history to argue that § 1028(a)(7) targets fraud and identity theft. Presumably, Larry believes this supports an inference that the mailed identification information must be used in furtherance of a crime of fraud or identity theft before a completed § 1028(a)(7) violation is made out. Finally, Larry highlights gradations in the punishment scheme of § 1028 to suggest that the punishment corresponding to paragraph (a)(7) would be disproportionately severe if it did not require illegal conduct separate and distinct from the mailing of identifying information itself.

Larry's interpretation of the indictment is less developed by the briefing. The government identifies 18 U.S.C. § 2722(a) as the unlawful activity in connection with which the Snows are alleged to have mailed the DMV printout. Dkt. 58. That statute provides, "It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2721(b) provides a list

of fourteen permissible uses. From this it stands to reason that the relevant unlawful activity is Larry Snow's accessing the DMV database to obtain and disclose the personal information of Person A. And the unauthorized transfer of that information in the U.S. mail is the transfer of a means of identification of another person. Neither Larry nor Bryant Snow have offered an alternate reading of the government's indictment.

### III. Analysis

The Snows' conduct, as alleged, is prohibited by the plain language of § 1028(a)(7). There is no ambiguity that justifies resort to tools of statutory construction or legislative history. And even if there were, the Snows have failed to identify anything that would take their actions outside the statute's reach.

### Standard of Review

The Court must grant a motion to dismiss[2] if the allegations in the indictment "if true, would not state an offense." *United State v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). Thus, the Court must determine whether the Snows' actions, as alleged in the indictment, meet the elements of § 1028(a)(7).

### Motion to Strike Vehicle ID Numbers

The definition of the term "means of identification" in § 1028(a)(7) is a question of statutory interpretation. *United States v. Mitchell*, 518 F.3d 230, 233 (4th Cir. 2008). In *Mitchell*, the Fourth Circuit was asked to decide whether use of a fake driver's license to commit fraud

---

[2] It is not entirely clear whether Bryant's motion is based on Federal Rule of Criminal Procedure 7(d) (motion to strike surplusage) or 12(b)(3) (motion to dismiss). However, since the motion is clearly futile under Rule 7(d), as vehicle identifying information is relevant to other charges in the indictment even if it is not relevant to the § 1028(a)(7) charge, the Court will treat both motions as being brought under Rule 12(b)(3).

was use of "a means of identification of another person" within the meaning of § 1027(d)(7).[3] The language of the statute was sufficient to answer that question because the statutory definition provided by § 1028(d)(7) "plainly clarifies the meaning." *Id*. at 233–34. The defining feature is information sufficient to identify a specific individual. "The definition, in other words, allows for an identifier, taken alone or together with other information, to qualify as a means of identification so long as the sum total of information identifies a specific individual." *Id*.

It is tempting to end the matter here. The Snows themselves have demonstrated that vehicle identifying information can be used to identify a specific individual. On the other hand, the *Mitchell* definition by itself may not be entirely responsive to the Snows' motion. The fake driver's license in *Mitchell* could not identify a specific individual because the license was not stolen from a real person. It was truly a *false* license. And that was the focus of the Fourth Circuit's opinion—clarifying that the term "means of identification" includes only means of identification of real-life, specific individuals. *See Mitchell*, 518 F.3d at 235 ("Although a false identification document as defined by § 1028(d)(4) will include identifiers such as a name, *only* a false identification document that includes one or more identifiers sufficient to identify *a specific individual* may involve use of 'a means of identification of another person' under the statute.").

The Snows have brought a different argument. And they might say that the *Mitchell* definition is incomplete in that it was not meant to resolve whether information directly referring to people (as opposed to property) should count.

But even if the *Mitchell* definition is inapposite, its reasoning decides this case. The statutory definition provided by § 1028(d)(7) "plainly clarifies" the meaning of "a means of

---

[3] While the Court was interpreting the phrase "a means of identification of another person" as used in 18 U.S.C. § 1028A(a)(1), not § 1028(a)(7), both sections key that term to the definition provided in § 1028(d)(7).

identification of another person" with respect to the Snows' motions as well. *Mitchell*, 518 F.3d at 233–34. And "[w]hen the statute's language is plain, the sole function of the courts is to enforce it according to its terms, except in the rare case in which the literal application . . . will produce a result demonstrably at odds with the intention of its drafters." *Id*. (internal quotation marks omitted).

As the government reminds us, people are often identified by their property—so that property identifying information falls decidedly within the category of "*any* name or number that may be used, alone or in conjunction with any other information, to identify a specific individual[.]" § 1028(d)(7) (emphasis added). *Cf. U.S. v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (citing Webster's Third New International Dictionary 97 (1976)). With respect to the applicability of canons of construction, it is now well established that descriptive canons should be used to resolve ambiguity.[4] Not create it. *See Yates v. United States*, 135 U.S. 528, 564 (2015) (Kagan, J., dissenting).

Section 1028(a)(7)'s origin within an act particularly addressing identity theft and fraud admittedly makes its application to the Snows' attempts at informant retaliation somewhat peculiar. But not ambiguous. The Snows could presumably have used Person A's VIN, title, and

---

[4] The Snows appear to misunderstand these canons. *Ejusdem generis* traditionally applies to cabin a catchall phrase that *follows* a list of specifics. Not to limit a substantive definition preceding a list of illustrative examples. SCALIA AND GARNER, READING LAW, THE INTERPRETATION OF LEGAL TEXTS, 203 (2012). Such a statutory definition is typically read to reflect a "belt-and-suspenders" approach—a way of emphasizing the expansiveness of the definition via the offering of examples. "[T]he word *include* does not ordinarily introduce an exhaustive list[.]" *Id*. at 132. This also explains why the government's interpretation of the statute does not render the illustrative examples surplusage. That canon recognizes that some redundancies are part of common usage. *Id*. at 177. Similarly, *noscitur a sociis* usually applies where a word in a list is of ambiguous scope to limit its scope to the common quality of other words in the list. *Id*. at 197. Again, not to limit an expansive definition followed by examples.

registration number to commit some act of fraud or identity theft. And Congress is free to act prophylactically—to criminalize acts which facilitate fraud and identity theft in addition to fraud and identity theft itself.

The Snows' argument respecting legislative history and existing caselaw fair no better. "Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it." *Milner v. Department of Navy*, 562 U.S. 562, 574 (2011). And in any case, as explained above, nothing about the statute's status as a fraud and identity theft provision prevents its applicability to the Snows' alleged conduct. Lastly, the lack of any example in the caselaw where misuse of vehicle identifying information is prosecuted under § 1028(a)(7) is unsurprising given the oddity of what the Snows'are alleged to have done here. But they should not benefit from being unique in their criminality.

The text is clear, and it clearly covers the unlawful transfer of vehicle identifying information.

### Motion to Dismiss § 1028(a)(7) Counts for Lack of *Other* Unlawful Activity

A quote from a 2007 Ninth Circuit opinion plays an outsized roll in Larry's briefing. Especially considering the lack of context accompanying it. While the quoted (and with emphasis added) language—"*other* unlawful activity"—may lead unwary readers to believe the Ninth Circuit intended to articulate a separate-predicate-unlawful-act requirement, an unabridged reading of *Sutcliffe* does not support that conclusion.

The defendant in *Sutcliff* had argued that the statutory phrase "intent . . . to aid or abet" imported all the elements required for an aiding and abetting conviction. One of which is proof of the commission of the underlying crime. The Ninth Circuit disagreed. It held that the government need only show an *intent* to aid or abet. 505 F.3d at 960. ("We therefore hold that

10

the government must only prove that the defendant committed the unlawful act with the requisite criminal intent, not that the defendant's crime actually caused another crime to be committed."). It was in contrasting the elements of an aiding and abetting conviction from a § 1028(a)(7) conviction that the quoted passage comes. The word "other" is at best dicta. It played no part in the Ninth Circuit's substantive analysis.

Larry's superfluity and rule of lenity arguments are equally unavailing. The fact that a person is very likely to violate multiple criminal codes when knowingly transferring a means of identification of another person in U.S. mail without lawful authority is a feature of our large criminal code. Not a bug in the government's interpretation of § 1028(a)(7). And the rule of lenity has no application in the absence of ambiguity. *See Yates*, 574 U.S. at 566 ("[E]ven in its most robust form, the [rule of lenity] only kicks in when, after all legitimate tools of interpretation have been exhausted, a reasonable doubt persists regarding whether Congress has made the defendant's conduct a federal crime.") (internal quotation marks omitted). Larry's (and Bryant's in his own reply brief) legislative history arguments rely on the same mistaken premise. As already noted, legislative history cannot be used to create ambiguity. And even if it could, Congress is free to target identity theft downstream by criminalizing enabling acts upstream.

Finally, Bryant argues that the fact that § 1028(a)(7) is punishable by five years imprisonment, as opposed to the catch-all one-year term that applies to § 1028, "manifests the determination by Congress that violations of § 1028(a)(3) and § 1028(a)(7) present a greater likelihood of harm to the public." Dkt. 142 at 17.

Take that as a given. It does not preclude the government's reading. Section 1028(b)(1)(D) provides for a maximum sentence of 15 years if the person committing a § 1028(a)(7) offense obtains anything of value aggregating $1,000 or more during any 1-year

11

period. Section 1028(b)(3) provides for a maximum sentence of 20 years if the offense is committed to facilitate drug trafficking or is in connection with a crime of violence. Section 1028(a)(4) provides for a maximum sentence of 30 years if the offense is committed to facilitate an act of domestic terrorism. If anything, these gradations suggest that serious conduct separate and distinct from—but connected to—the transfer of means of identification itself *are* treated separately and more severely than the run-of-the-mill § 1028(a)(7) violation. The run-of-the-mill sort get five years under § 1028(b)(2)(B). Others get more. And the one-year maximum provided by § 1028(b)(6) applies to still less serious conduct.

In any event, the Snows have failed to make out even their own minor premise. It is not true that the unlawful activity in connection with which the Snows are alleged to have transferred a means of identification is the same conduct by which the government says the means of identification were transferred. The transfer element was satisfied when Larry Snow mailed the DMV printout. And that conduct occurred subsequent[5] to the § 2722 violation, which was completed when Larry illegally accessed the DMV database.[6]

---

[5] *Cf. United States v. Buentello*, 423 F. App'x 528, 532 (6th Cir. 2011) ("[T]he plain language of [§ 1028(a)(7)] is drafted such that it does not require that the unlawful activity take place after the transfer.").

[6] Bryant argues that the § 1028(a)(7) charges must be dismissed as to him because he did not personally obtain personal information from a motor vehicle record in violation of § 2722(a). "However, section 1028(a)(7) does not require that the individual who transfers the identification document be the one to commit [the unlawful activity]. All the statute requires is that the transfer be in connection with some unlawful activity []."*Buentello*, 423 F. App'x at 532 n.1. Regardless, Bryant disclosed Person A's DMV information in violation of § 2722(a) when he shared the printouts with others in jail. Dkt. 58.

## IV. Conclusion

The plain language of § 1028(a)(7) covers the Snows' conduct as alleged in the indictment. And the plain language controls. Accordingly, the Court will deny the Snows' Motions to Dismiss the Indictment (Dkts. 106, 108, 120, 126).

Entered this  8th  day of September, 2021.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE